Good morning. Good morning, Your Honors. May it please the Court, Rebecca Pennell appearing on behalf of Mr. Cabrera-Gutierrez. There were three issues briefed in this case, two of which don't have binding circuit precedent. The one issue regarding the constitutionality of SORNA under the Commerce Clause and the National Federation of Independent Businesses v. Sebelius case is a big issue, but I've had that issue and other cases pending for years now, so I'm not sure if the Court is... You said there's no non-circuit case on that? There was a case that Judd Callahan and I were involved in, involving Mr. George. Welcome back. Thank you. This is deja vu. But Mr. George's case was pending rehearing on BONC on several issues. During that pendency, the case was dismissed for lack of jurisdiction because his travel had taken place prior to a valid regulation making SORNA retroactive. So it was vacated really on other grounds than the Commerce Clause issue? It was vacated on other grounds. There was a BONC on rehearing petition pending on the Commerce Clause grounds, which was never decided just because it was dismissed on other grounds. There were other cases also pending on that Commerce Clause issue, which to this day I've had cases pending for five years. But then there's a couple other Ninth Circuit cases that have cited George and come to the same conclusion on the Commerce Clause and all the other circuits that have heard this, with I think the exception of there's a Fifth Circuit case that's pending before the Supreme Court. And that's what intra-state travel as opposed to interstate. The Fifth Circuit case is addressing whether or not SORNA is constitutional when it relies solely on a federal conviction. And there's a split between this Court's decision in the Elk Shoulder case and the Fifth Circuit. I notice my clock hasn't started. Oh, and I love the extra time. So there's a conflict between bills. We'll just say we've used a minute so far because we've just been catching up. There we go. But the Commerce Clause issue is a separate issue, and this is a pure Commerce Clause issue. There have been no circuit opinions addressing the Commerce Clause post-NFIB v. Sebelius. There have been about three District Court cases, I think, but there hasn't been a Circuit Court case. And I think this Court is uniquely positioned to decide the issue because even if George is persuasive authority, it certainly is not the type of binding authority given that the decision was vacated and the issue of the Commerce Clause never finally decided in that case. So I guess the issue is, have I changed my mind? Maybe you should be looking in these two directions. But you mentioned Elk Shoulder. And I was on that panel, but I don't remember. Did they decide that Commerce Clause issue? No, just the Federal Conviction issue. I remember we wrestled with that Fifth Circuit case. Right, and the Court disagreed with the Fifth Circuit case. The Court determined that under the Comstock decision from the U.S. Supreme Court, the fact of the Federal Conviction was sufficient. But it's a much different issue with respect to whether or not just based on interstate travel it's sufficient. NFIB v. Sebelius did two things that hadn't existed at the time of the George decision in terms of developing the Commerce Clause analysis. One is, the Court made a distinction between action and inaction. And of course, failing to register the sex offender is inaction as opposed to action. But the second thing that the Court did... So the second thing that the Court did, very importantly, was to say, look, the fact that you used to be involved in the health care market, maybe when you were born, so the fact that prior interstate commerce activity, or the fact that you may be involved in commerce in the future, isn't sufficient to support regulating inaction. And the same is true here when it comes to SORNA. SORNA relies on past or future. SORNA has not limited people while they're crossing state lines failing to register. That would be a much different scenario, a much narrower statute. But Justice Roberts wrote, look, people aren't involved in interstate commerce, he looked at car analogies. Just because you bought a car in the past and you may buy a car in the future doesn't make you active in commerce in any constitutionally relevant sense, even under the Necessary and Proper Clause. So just because someone crosses state lines at one point in time doesn't mean that they are involved in interstate commerce so that sometime in the future they might have to register as a sex offender. If the statute were just limited to interstate commerce, I agree it would be different. But NFIB v. Seville has said, look, those past actions or the possibility of future actions aren't sufficient. So I think that that's new information and very, puts it in a very different light than what this Court considered in George. And as I stated, there are no circuit decisions addressing. So there isn't anything really that's adopted the approach that you're espousing right now? Nor rejected. Nor rejected. I did a search. There is no circuit court decision addressing the constitutionality of SORNA after NFIB v. Seville. There are some district court decisions. The most compelling from my perspective, there's only a few. Judge Sessions out of Vermont issued a decision in 2012, United States v. Lott, located at 2012, Westlaw, 610-7676. I can submit a 28-J letter with that site if you want. How do you think? Keep a Doe is going to be argued next week, right? I think so, Your Honor. Yeah, I think that's Ann. But that really, they're really, well, it doesn't appear to me that this is an interest state situation in that because we have your client in Mexico and thus he somehow spontaneously made it there without crossing state lines. So it's not exactly the Fifth Circuit's case. Not at all. Do you think Keep a Doe is going to really shed any light on anything for us here? I doubt it, Your Honor. I doubt that they're going to get to whether or not the mere crossing of state lines. Keep a Doe, I'm sorry. That's fine. I think that they're going to look at the Comstock issue and whether or not a prior imprisonment in federal prison is sufficient to require future registration as a sex offender, which is a separate issue of whether prior crossing state lines would justify future regulation of inactivity. Going to future Supreme Court cases, there's also as to the next issue, the sentencing issue and the tier offenders. The Supreme Court on January 7th considered the modified categorical approach and issues that this court wrangled with in a guillamante de OCA, which could be relevant to the tier 3 versus tier 1 issue in that case. I'd like to address that briefly if I could. I don't think that the court, though, I think that even under a guillamante de OCA, the judicially noticeable documents in this case do not establish a tier 3 sex offense as opposed to a tier 1 sex offense. In order to be a tier 3, there must have been facts establishing that the victim was so incapacitated by alcohol that she could not consent. But in the plea colloquy, he says she's 15 and she was intoxicated and couldn't consent. Right. So there's two things. He never said she was so intoxicated that she couldn't consent. He just said she was under the influence of alcohol. Many people are under the influence of alcohol. So because he didn't use the word so, it's not enough? Well, that plus the fact that this court in a guillamante de OCA said the categorical approach with its focus on conviction as opposed to conduct is important because it allows the defendant to retain the benefit of his plea to a lesser charge. It would have been first degree rape if she'd been so intoxicated that she could not consent. That would be first degree rape. He was initially charged with first degree rape. He was allowed to plead guilty to a lesser offense, second degree sexual abuse. Now, second degree sexual abuse does not require that the victim be so incapacitated that she can't consent. That is only required for first degree, although second degree rape does cover someone who is underage. So in my opinion, the only thing necessary for his plea for the second degree was the fact of the age. The other fact. But he mentions that she was intoxicated. And we can speculate as to why. Like I said, he did not. It's his own words. It's his own words. His plea statement. The victim was 15 years old and, quote, was unable to consent to having sexual intercourse with me because she was under the influence of alcohol. Well, I think the agreement actually says legally consent. Right. She could not legally consent because she was. . . I don't know. Is that meant to be different than, you know, actual or physical or something? I read it as much different. If you read the pre-sentence report, which, of course, is not judicially noticeable, but it looks like this was a case of whether or not she actually consented or not because the police report said that she was saying no, no, and he was having sex with her anyway. But I think, in the end, it looks to me like he pled because she was too young, regardless of whether she consented or not. That being the case, he should get the benefit of his bargain. She could not legally consent. Why his lawyer threw in there that she was drinking alcohol, again, not necessary for the charge, would have made him guilty for a greater offense, the greater offense that he was not convicted of. And he did not say that she was so incapacitated. And the facts would indicate she wasn't so incapacitated. Do you want to save a minute for rebuttal? I would love to. Thank you, Your Honor. We're taking you a little over by our chat. Good morning. Good morning, Your Honor. May it please the Court, my name is Allison Gregoire, and I represent the United States in this matter. Turning briefly to the first issue, the government argues that do you think, what do you think whether SORNA violates the Commerce Clause? Is it an open question before the Ninth Circuit? Why or why not? It is not an open question before the Ninth Circuit. The Ninth Circuit has dealt with SORNA in the Carr decision. But additionally, the reason why it's being proffered as an open question is pursuant to the case of NFIB. First of all, NFIB dealt with whether or not the uninsured as a class have a substantial effect on interstate commerce, which would be the third Lopez category. SORNA has been routinely upheld by many courts to include this court under the first and second. So we're not even talking about the same type of category of interstate commerce. So what are you saying? We should disregard NFIB? I'm saying NFIB doesn't have any impact, Your Honor. It doesn't have any impact, first of all, because it, again, is dealing with an entirely different category of interstate commerce. Because that was the only, the third category was the only one that the government proffered in that case that it could be sustained under. Additionally, though, it speaks to inactivity. And in this case, 2250 has an express jurisdictional hook that someone move in between, move interstate, move in interstate commerce. Now, defendant seems to recognize in his briefing that that would accomplish satisfaction of the Commerce Clause, but insists that the registration requirement itself can be completely divorced from 2250. And that has been rejected again before by, that argument is not novel. That argument has been, has been repeated before the courts several times before NFIB and has been expressly rejected. And, in fact, even the Supreme Court in Carr talked about how 2250 is part of a statutory scheme and cannot be read on its own. And, of course, this court said that in George. And the government cites pretty heavily to the case of Sanders wherein the Seventh Circuit said, not only can it not be divorced because without the registration requirement, 2250 would have no basis. And without the 2250 providing the teeth, there would be no incentive for people to register. But, additionally, when you look to the ill that Congress was seeking to cure, that is that sex offenders fall in between the cracks, that we lose sex offenders who move interstate, that that's not just a jurisdictional hook. That is, in fact, the impetus for the legislation. So let me go back to your response to Judge Gallatin. You said it's not an open question in the Ninth Circuit. And what do you, primarily Carr, anything else? The constitutionality. It's not an open question in the Ninth Circuit. Isn't that what you said? I, oh, well, in the Ninth Circuit. I asked whether it violates the Commerce Clause. Is that an open question? And I don't believe it's an open question based on Carr and. And what else? Is it Carr? It is Carr in front of the. Well, and I'm trying to remember if Reynolds dealt with that expressly or not. I think Reynolds dealt more with the retroactivity. But the point being the Supreme Court has considered SORNA and has not found it violates the Commerce Clause. Nor have the circuit courts. So George, okay, George was vacated on different grounds. So, but then other Ninth Circuit cases have cited it subsequently in terms of its reason, and those were published cases, right? That's correct. So you're saying on the Commerce Clause it really isn't an open question. Do you think that we need to defer consideration based on Kibideau, which is scheduled for argument on April 17th? No, Your Honor. Defendant's case was not even charged in the alternative. Defendant's case here was charged purely as being the theory that he moved in interstate commerce. And that's, in fact, what he pled guilty to. He pled guilty to that element. And Kibideau does not raise that same concern. So if now Gutierrez, Cabrera-Gutierrez admitted only if he admitted only that the victim was a minor and not that she was under the influence of alcohol at the time of the sexual intercourse, would his crime have been, still been a crime of sexual abuse under federal law? No. So you're reading it as, when I quoted it, that you're not reading it the same as appellant is reading that. That's correct, Your Honor. And, in fact, I would argue that I'm reading it with the plain meaning of the words. And that is because defendant says, and if I could just quote it briefly, I plead guilty on the basis of the fact that in Wasco County, Oregon, I, on May 2, 1998, did knowingly have sexual intercourse with Redacted, and she was unable to legally consent to having sexual intercourse with me because she was under the influence of alcohol at the time of the sexual intercourse, period. Further, Redacted was 15 years old on 5-2-98. So if anything is surplusage, it is the age. Defendant is making clear his theory of liability through the use of the causation word because she was unable to consent because she was under the influence of alcohol. As I said earlier, it's qualified by the term legally consent. There's a difference between, like, legal consent and actual consent, right? And doesn't the, you know, the modified approach requires, you know, plainly shown that it's actual consent? What we are comparing it to in this case would be a violation of Title 18, United States Code 2242. And there it requires a sexual act, in pertinent part, a sexual act with one incapable of apprising the nature of the conduct. Unable to legally consent in Oregon, insofar as there is an intoxication piece, and this is established in State v. Stamper and also in this court's decision, also speaks to the way second-degree sexual abuse in Oregon can be committed in United States v. Beltron. And they talk about how being unable to consent will qualify as does not consent for purposes of the statute. And one is unable to consent if he or she is mentally incapacitated. You're avoiding, you know, what was meant here when they inserted the term legally before consent. It must mean something. And that's, I apologize, Your Honor, if I wasn't correct. What I'm arguing that it means is that legal inability to consent in Oregon is mentally incapacity, which would be the same or at least comparable to 2242. No situation. Well, I would note the defendant hasn't offered what else legally unable to consent for sexual intoxication means. I'll just give you a for instance. You know, it's common in many states, I think in Oregon, you know, having sex with, let's say, a 15-year-old is statutory rape because the victim is unable to consent. Unless the perpetrator is less than three years older, in which case it is consent. Right? So, you know, legal consent is different from actual consent. I agree with that, Your Honor. But he says... Even under Oregon law. Right. But he says unable to legally consent because she was intoxicated. So the legal consent is directly tied to the intoxication. And for the intoxication to be relevant under Oregon law, it would have to amount to mental incapability. Excuse me, mentally incapacitated. All right. So it has nothing to do with her being 15 years old? I would argue that he's offering two bases, yes. Because that 15 years old is a totally separate sentence. The first sentence says she's unable to consent because of the intoxication. Let me ask another question about this. What do they call it in Oregon? Police statement or something like that? Whatever it is. Petition to enter a plea. Was he counseled at that stage, you know? He had counsel, yes, Your Honor. The counsel, I believe, signed it as well. In the state court? In the state court. Yeah. Okay. And I would note, turning to Aguila Montes de Oca, Aguila... The government argues it doesn't really need Aguila in this case because this is a true modified categorical statute that can be committed any number of ways. And pursuant to a modified categorical approach, even as Navarro Lopez stood, this court could go into which way this offense was committed. But pursuant to Aguila, it says, look to the necessary facts of conviction necessarily rested on in light of the theory of the case as revealed in the relevant Shepard documents. The government argues that the theory of the case, and here the defendant says she could not consent because she was incapacitated. Because she was under the influence of alcohol. So that is the theory of the case. And Aguila also notes that this court will only inquire into the documents to the extent that they are, or excuse me, the facts to the extent they are discernible from a limited set of documents proved in Shepard. But we need not ignore such facts when they are available in those documents. And that's at page 937. So the government argues that this court can and should consider a defendant's statement there. And argues that insofar as defendant cites Young v. Holder, that also is not helpful to defendant. Because there the Young was pled guilty to that California health and safety statute that has any number of theories of liability in it. And the court said we won't assume that because he pled guilty to one, he necessarily has admitted guilt as to every one of these theories. But the court went further to note that of course if defendant admitted either A or B during the plea colloquy, that would constitute an admission of that particular conduct. So again, these cases are talking about really largely inequity. That we're not going to hold defendant responsible later on in a federal conviction for a theory that was never contemplated at the time that he entered his guilty plea. But in this case, defendant has made very clear that this was a theory that was contemplated and he was admitting it. All right.  Thank you. You have a minute. Thank you. The government is effectively saying that Mr. Cabrera-Gutierrez committed the crime of first degree rape because that crime can be committed by having sex with someone incapable of consenting due to intoxication. Whereas second degree rape does not have any such requirement. But a guillemante doca says that that is one thing you can't do. While you may be able to do a lot of things under the modified categorical approach, the government cannot come in post-conviction and say, you know, even though the defendant pled guilty to a lesser offense, we're going to point to these facts and say actually what he did was a greater offense. That's what they're doing here. A guillemante doca said, no, you can't. The defendant gets his benefit under the bargain under the Sixth Amendment and under the modified categorical approach. If a defendant actually commits robbery but gets a plea bargain down to theft, the government can't come in post-conviction and say that's a crime of violence. If a defendant, as is commonly the case, gets a conviction for simple possession of drugs but what he really did was distribute, the government can't come in later and say that's actually a drug trafficking offense under the modified approach. All right. Your time's up. You're in overtime. Thank you. This matter is submitted. I want to thank both of you for a very good argument. These are the categorical and the modified categorical approach and SORNA are not easy issues, and you both clearly have an excellent command of the case law, and you did a very good job, both of you. Thank you.
judges: Collins, Tashima, Callahan